UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THEO FARNSWORTH,

    Plaintiff,

v.                                            Case No. 3:13cv506/CJK

SOCIAL SECURITY ADMINISTRATION,

    Defendant.
_____/

## MEMORANDUM ORDER

    This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Theo Farnsworth's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment.  Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, will be affirmed.

## ISSUES ON REVIEW

    Plaintiff, who will be referred to as claimant, plaintiff, or by name, raises a single issue on appeal – whether the Commissioner's decision finding that he is not

entitled to DIB or SSI is supported by substantial evidence.

## PROCEDURAL HISTORY

Claimant applied for DIB and SSI on June 24, 2010, alleging disability beginning on March 1, 2009. T. 170-76, 211.[1] His application initially was denied, and the denial was upheld on reconsideration. T. 8-9, 11-30, 102-103. Claimant filed a request for a hearing on January 20, 2011. T. 114. His request was granted, and a hearing was conducted on March 20, 2012. T. 30-80. On May 23, 2012, the administrative law judge ("ALJ") found claimant not disabled as defined by the Act. T. 14-25. Claimant requested review by the Appeals Council, which denied his request. T. 1-10. The ALJ's decision thus became the final decision of the Commissioner.

## FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issue raised in this appeal:

• Claimant engaged in substantial gainful activity during the following periods: July 1, 2011 through the hearing date (20 C.F.R. 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). T. 16.

• There was a continuous 12-month period during which claimant did not engage in substantial gainful activity. The ALJ's remaining findings address that period. T. 17.

---

[1] The administrative record, as filed by the Commissioner, consists of eight volumes (docs. 16-1 through 16-8) and has 435 consecutively numbered pages. References to the record will be by "T.," for transcript, followed by the page number.

Case No. 3:13cv506/CJK

- Claimant has the following severe impairments: autistic spectrum disorder, attention deficit disorder, and narcissistic personality disorder (20 C.F.R. 404.1520(c) and 416.920(c)). T. 17.

- Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 405.1525, 404.1526, 416.920(d), 416.925 and 416.926). T. 17-18.

- Claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: due to attention deficit disorder, claimant should avoid work around heights or hazardous substances and should not drive automotive equipment or operate heavy machinery. Additionally, claimant should perform no production-paced work with hard-target quotas and should not interact with the general public. Claimant would have some impairment in concentration, persistence or pace which could cause him to be off task or at a non-productive pace for up to 5% of the workday. T. 19-24.

- Claimant is capable of performing past relevant work as a cook (DOT Code 313.374-010), which does not require the performance of work-related activities precluded by claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965). T. 24.

- Claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2009, through the date of the decision (20 C.F.R. 404.1520(f) and 416.920(f)). T. 24.

## FACT BACKGROUND AND MEDICAL HISTORY[2]

Claimant is a high school graduate, attended some college, is able to read and write, has an I.Q. in the high average range, and, at the time of the hearing, had been working full-time for eight months. T. 20. Claimant nevertheless maintains that he is disabled as a result of Attention Deficit Disorder, Obsessive Compulsive Disorder, and Asperger's Disorder. While the record supports claimant's allegation that he suffers from a serious medical condition, it also supports the ALJ's finding that claimant is not disabled under the Act. Indeed, claimant was evaluated by a number of providers whose findings and opinions are inconsistent with his claim of disability.

Specifically, plaintiff was evaluated by Julie Harper, Psy.D., on July 14, 2009, as part of a vocational rehabilitation and mental consultative examination. T. 267-72. Harper noted that claimant has Asperger's Disorder, ADHD, and Narcissistic Personality Disorder; she also noted that plaintiff's IQ was in the high average range. T. 269-70. Harper assigned plaintiff a GAF score of 54 and suggested that he find jobs in certain non-verbal fields, including graphic design, computers, and drafting.[3]

---

[2] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record. Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

[3] The GAF rating has two components: (1) symptom severity and (2) social and occupational functioning. The GAF is within a particular range if either the symptom severity or the social and occupational level of functioning falls within the range. When the individual's symptom severity and functioning level are discordant, the GAF rating reflects the worse of the two. The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th ed., text rev., 2000). A GAF between 51 and 60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning;" a GAF between 61 and 70 indicates "mild" symptoms or "some difficulty in social, occupational or school functioning," but "generally functioning pretty well;" a GAF score

T. 20-22, 271.

On May 19, 2009, claimant saw Patricia Christie, a Psychiatric Nurse Practitioner at Bridgeway Center, for medication management. T. 309-10. Christie indicated that plaintiff was doing "really well" on his medications and assigned him a GAF score of 75 to 80. T. 309. Claimant saw Christie again on September 23, 2009, at which time Christie noted that claimant continued to do well on his medications, was "still trying to look for work," and had a GAF score of 80 to 85. T. 308. During claimant's last visit with Christie, she assigned him a GAF score of 80. T. 307. The results of Christie's mental status examinations were largely unremarkable.

Plaintiff saw Linda Buckland, a mental health counselor, several times in the fall of 2009 as part of an Employee Assistance Program. T. 349-52. On November 5, 2009, Buckland indicated that plaintiff was oriented and stable but remained confused about other people's reactions to him, particularly his wife's. T. 351. On November 10, 2009, Buckland described plaintiff as oriented and stable; she also noted that his mood and affect were calmer. T. 350. During subsequent visits with Buckland, in June and July 2010, Buckland again noted that plaintiff was oriented and stable and that his mood was calmer. T. 347-48. On June 23, 2010, plaintiff

---

between 71 and 80 indicates transient and expectable reactions to psychosocial stressors and no more than an slight impairment in social, occupational, or school functioning; a GAF score between 81 and 90 indicates no or minimal symptoms and good functioning in all areas. *Id.* The most recent edition of the Diagnostic and Statistical Manual no longer recommends use of the GAF scale, acknowledging that "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

Case No. 3:13cv506/CJK

indicated to Buckland that he quit taking his medications. T. 348.

Plaintiff saw Nelson M. Handal, M.D., on August 6, 2010. T. 21, 354-58. Plaintiff indicated to Nelson that he was not "communicating as expected" and was concerned with his "social and emotional interaction" but was seeking employment. T. 354-55. Plaintiff's mental status examination was largely normal. T. 357. Dr. Handal assessed Asperger's disorder, ADHD, and sleep disturbance, unspecified, and assigned plaintiff a GAF score of 51 to 60. T. 357-58.

Dr. Harper performed a second psychological evaluation of plaintiff on August 17, 2010, at the request of a state agency. T. 363-67. At that time, plaintiff was trying to start an "odd jobs self-employment situation." T. 365. Although plaintiff had difficulty with attention and concentration and a blunted affect, he was oriented and his rate of speech was within normal conversational limits, although he spoke loudly. T. 366. Dr. Harper diagnosed Asperger's Disorder, ADHD, and Narcissistic Personality Disorder; noted that plaintiff was a fair historian; and assigned plaintiff a GAF score of 77. T. 366.

In October 2010, plaintiff saw Alex Kolevzon, M.D., at the Mount Sinai Medical Center in New York City for an autism evaluation. T. 399-408. Dr. Kolevzon noted that plaintiff had difficulty with awareness, including of the tone and volume of his voice, and reported that he was unable to interpret emotional expressions in others and was very "concrete and literal." T. 399. During his mental status examination, plaintiff made sustained and appropriate eye contact and initiated interactions with the examiner. T. 402. The pragmatics of his language appeared to be within normal limits. T. 402. There was some evidence of compulsive behaviors, but no unusual or encompassing preoccupation or unusual sensitivities. T. 402.

According to Dr. Kolevzon, plaintiff was "convinced that he has Asperger's and appear[ed] quite invested in the diagnosis as a means to explain the difficulties he has had in his life, particularly around relationships and vocational problems." T. 402. Plaintiff also was "extremely frustrated that people do not understand him and that he did not understand others." T. 402. Dr. Kolevzon concluded that plaintiff met the criteria for autism and might "benefit from job coaching and vocational training in order to help him identify areas of interests from which he may get personal satisfaction." T. 407.

On November 23, 2010, Jessy Sadovnik, Psy.D., a state agency psychologist, completed a psychiatric review technique and mental residual functional capacity assessment in which he concluded that plaintiff had mild restriction of daily activities, moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. T. 424. Dr. Sadovnik assessed Asperger's Disorder and ADHD, in partial remission, and opined that plaintiff could continue to experience social difficulties related to his condition. T. 426. Dr. Sadovnik nevertheless found plaintiff mentally capable of performing routine tasks independently, noting that he "displays an overall adequate Mental Status, with some concentration problems noted." T. 426. In Dr. Sadovnik's view, there was "no indication of mental impairment that would meet or equal any listing at this time" and plaintiff was "capable of performing simple and repetitive activities that would allow him to function in a workplace environment." T. 412, 426.

In arguing that the ALJ's decision is not supported by substantial evidence, plaintiff expresses no interest in the findings above and focuses on an evaluation prepared by Mark Laufer, a disability analyst and rehabilitation provider, on June 26,

2009, and upon two medical source statements prepared on June 21, 2011. In a Comprehensive Vocational Evaluation, Laufer noted that plaintiff had a "'20 year history of semi-skilled employment," currently was employed as a commission sales person for Transaction One, and had worked as a timeshare salesman and telemarketer. T. 292. According to Laufer, plaintiff reported boredom and lack of focus and concentration as factors that contributed to his inability to maintain long-term employment, which may also have been impacted by plaintiff's "skewed ego/self image that do[es] not match up with actual accomplishments." T. 292. Laufer indicated that plaintiff applied for disability benefits "because he has experienced an inability to move ahead in his career." T. 293. In Laufer's opinion, plaintiff "appear[ed] to be capable of identifying and securing employment but not maintaining it." T. 294. The ALJ assigned no weight to Laufer's opinion because he is "not an acceptable medical source" and his opinion contradicted plaintiff's testimony at the hearing that he had worked full time in the same position for eight months. T. 23.

The first medical source statement upon which plaintiff focuses comes from counselor Buckland, bearing a date almost a year after she last treated plaintiff. In the statement, Buckland opined that plaintiff had a moderate restriction in his ability to ask simple questions or request assistance and complete daily activities, such as attend meetings, work around the house, and socialize with friend and neighbors. T. 428. Buckland also found plaintiff moderately impaired in his ability to understand, remember, and carry out simple instructions; make simple work-related decisions; and be aware of normal hazards and take appropriate precautions. T. 346, 428-29. According to the document, plaintiff had a marked restriction in his ability to

understand, remember, and carry out complex instructions; understand, remember, and carry out repetitive tasks; sustain a routine without special supervision; respond appropriately to changes in the work setting; and respond to customary work pressures. T. 428-29. Buckland found plaintiff extremely restricted in his ability to get along with co-workers and peers and interact appropriately with the general public; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and respond appropriately to supervision.[4] T. 428-29.

Nancy L. Shue, another mental health counselor, completed the other medical source statement two years after she last saw plaintiff. In the statement she completed, Shue indicated that plaintiff had a moderate restriction in his ability to ask simple questions or request assistance and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. T. 431-32. Shue noted a marked restriction in plaintiff's ability to interact appropriately with the general public; complete daily activities, such as attend meetings, work around the house, and socialize with friends and neighbors; understand, remember, and carry out simple and complex instructions; sustain a routine without special supervision; make simple work related decisions; and be aware of normal hazards and take appropriate

---

[4] Buckland's notes suggest that claimant was not always compliant in taking his prescribed medications, which the ALJ founds indicative of the fact that claimant's "symptoms may not have been as limiting as [he] alleged in connection with the application." T. 21.

Case No. 3:13cv506/CJK

precautions. T. 431-32. Shue indicated an extreme restriction in plaintiff's ability to get along with co-workers and peers; understand, remember, and carry out repetitive tasks; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to supervision; respond appropriately to changes in the work setting; and respond to customary work pressures. T. 71, 431-32.

The ALJ assigned little or no weight to the medical source statements because she found them unsubstantiated by treatment notes and inconsistent with plaintiff's employment history. T. 23. In the ALJ's opinion, claimant's recent work activities would not have been possible if plaintiff had the actual marked or extreme impairments indicated by Buckland and Shue. T. 23.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc.*

*Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[5]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[5] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Case No. 3:13cv506/CJK

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[6]

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

---

[6] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

## ANALYSIS

Claimant argues that the Commissioner's decision is not supported by substantial evidence. Specifically, plaintiff claims the ALJ "abused her discretion by rejecting or placing little to no weight in reports and/or evaluations of treating doctors and professionally licensed individuals with expertise in areas germane to [his] disability and inability to obtain gainful employment." Doc. 20 at pg. 4. According to plaintiff, "[t]his abuse is evidenced by the ALJ placing great weight in reports, statements and/or evaluations of the (DDS reviewing physician), Dr. Jessy Sadovnik, . . . a doctor of psychology whom I've never seen, nor have I ever spoken to." Doc. 20 at pg. 4. Plaintiff maintains that Dr. Sadovnik's opinion is based on limited records and fails to account for a number of pertinent medical, occupational, and mental evaluation records.[7] Plaintiff also argues that the ALJ erred in giving no weight to the opinion of Mark Laufer, who he characterized as the "most qualified vocational/occupational professional to render expert opinions regarding [plaintiff's] ability to obtain gainful activity," and in rejecting the medical source statements of Buckland and Shue. Doc. 20 at pg. 6.

Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d

---

[7] The records plaintiff complains Dr. Sadovnik failed to review include the medical source statements of Buckland and Shue; Physician Professional Qualifications of Dr. Kolevzon; a March 1, 2012, letter from Buckland describing the counseling she provided plaintiff and expressing her opinion that plaintiff needed to continue with therapy; and a letter from Gary Dethloff of Emerald Coast Audiology regarding plaintiff's hearing impairment. T. 428-35. Plaintiff does not specify the manner in which any of the records might have influenced Sadovnik's opinion.

Case No. 3:13cv506/CJK

1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; *see also Lewis*, 125 F.3d at 1440 (citing cases). If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ is to give it controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d). A brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris*, 619 F.2d 412, 417 (5th Cir. 1980).

The law concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form. Such opinion evidence will not bind the Commissioner. Indeed, courts have found that such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein. *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))). Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole." *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).

The ALJ did not err in rejecting the opinions of Laufer, Buckland, and Shue. First, neither Laufer, Buckland, nor Shue is an "acceptable medical source" under the applicable regulations. *See* 20 C.F.R. §§ 404.1502, 404.1513(a), (d)(1); 416.902, 416.913(a)(d)(1); *see also* SSR 06-03p. As a result, their opinions are entitled to "significantly less weight." *See* 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1). Second, the medical source statements prepared by Buckland and Shue consist entirely of conclusory statements expressed on pre-printed check-off forms. They also are unsupported by treatment notes or the record as a whole. In fact, the opinions of Buckland and Shue, as well as those of Laufer, flatly contradict plaintiff's testimony at the hearing that he worked full-time in the same position from July 2011 until the date of the hearing and worked for eight months as a cook in 2008. T. 23, 36, 39, 241. As the ALJ explained, plaintiff would not have been able to sustain his

employment in either instance if he had marked or extreme impairments as noted by Buckland and Shue.  The ALJ likewise did not err in placing significant weight on the opinions of Dr. Sadovnik, who has a doctorate in psychology and is a state agency medical/psychological consultant.  State agency medical/psychological consultants are highly qualified physicians and psychologists who are considered experts in Social Security disability evaluation.  *See* 20 C.F.R. §§ 404.1527(e)(2)(i); 416.927(e)(2)(i), SSR 96-6p.  Moreover, Dr. Sadovnik's opinions find ample support in the record.

Finally, the court finds the ALJ's decision is indeed supported by substantial evidence.  Notably, with few exceptions, plaintiff's mental status examinations were normal during the entire period reflected in the record.  In all but two instances, plaintiff was assigned GAF scores between 70 and 85, which indicate at worst only "mild" symptoms or "some difficulty in social, occupational or school functioning" and, at best, no or minimal symptoms and good functioning in all areas.  In one of the instances in which plaintiff received a GAF score less than 70, the doctor subsequently assigned him a GAF of 77.  Perhaps most significantly, not a single acceptable medical source found plaintiff incapable of working.  To the contrary, Drs. Harper, Kolevzon, and Sadovnik all contemplated plaintiff working, as did plaintiff himself.  The ALJ found Dr. Kolevzon's opinions significant because he is a specialist medical source; she gave significant weight to the opinions of Dr. Sadovnik because his "comprehensive assessment was based on a review of the objective medical evidence contained in the file."  T. 23.  In short, there is no credible evidence that plaintiff is unable to work, as that concept relates to this disability claim.  The fact that plaintiff may not have been satisfied with the jobs he had does not equate to

an inability to perform them. The undersigned thus concludes that the ALJ's decision was supported by substantial evidence.[8] *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").

**ACCORDINGLY, it is ORDERED:**

1. Plaintiff's Motion for Oral Arguments (doc. 20) is DENIED.

2. The decision of the Commissioner is AFFIRMED and plaintiff's application for Disability Insurance Benefits and Supplemental Security Income is DENIED.

3. The clerk is directed to close the file.

**DONE AND ORDERED** this 6th day of January, 2015.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[8] The court notes that, to the extent it reviewed the legal principles upon which the ALJ's decision is based, it conducted a *de novo* review. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).